CASE NOS. 23-3999, 23-4000, 23-4001

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEAN GILLISPIE

Plaintiff - Appellee Cross-Appellant

v.

MIAMI TOWNSHIP, OH BOARD OF TRUSTEES

Defendant, Intervenor - Appellant Cross-Appellee

v.

MATTHEW SCOTT MOORE

Defendant - Appellee Cross-Appellant

Appeal from the United States District Court for the Southern District of Ohio,
Western Division
CASE NO. 3:13-cv-00416-TMR

**FOURTH BRIEF OF DEAN GILLISPIE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT ......................................................................................................3

I.   Because a Reasonable Jury Can Find For Gillispie on His *Monell* Claim, Remand For Trial Is Required............................................................................3

II.  Properly Construed, the Record Demonstrates A Reasonable Jury Can Easily Find The Township Failed to Provide Needed Training and Supervision and Was Deliberately Indifferent ...............................................................................4

    A. The Record Demonstrates The Township's Abject Lack of Training On Core Constitutional Duties .........................................................................4

    B. A Jury Can Find The Township Was Indifferent to the Obvious Need For Training on How To Implement Basic Constitutional Guarantees ..........15

III. A Jury Can Easily Find The Township Failed to Adequately Supervise Moore and Was Indifferent to The Need to Supervise Him In Particular ...................16

IV.  A Reasonable Jury Could Also Find Indifference In The Township's Failure To Implement Practices or Other Procedural Rules In the Absence of Necessary Policies and Procedures ....................................................................20

    A. The Township Lacked Any Written *Brady* Policies or Procedures .........21

    B. Despite The Township's Own Inconsistent Testimony, A Reasonable Jury Can Conclude The Township Lacked Written Policies Concerning Identification Procedures............................................................................24

    C. The Township's Contrary Argument's Fail .............................................25

CONCLUSION ..................................................................................................27

# TABLE OF AUTHORITIES

Cases

*Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970) ....................................3

*Armstrong v. Squadrito*, 152 F.3d (7th Cir. 1998)...................................21

*Avery v. Burke Cnty*., 660 F.2d 111 (4th Cir. 1981) ................................20

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
    520 U.S. 397 (1997)...............................................................4, 10, 15

*Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004) ...........................................15

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................... 1, 4-6, 9, 11, 12, 14-18, 21-23

*Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989*)* ...........................12

*Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir.2003) ...............................8

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................4, 10, 11, 15, 20

*Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017) ....................................15

*Doe v. Claiborne Ctny., Tenn. By & Through Claiborne Ctny. Bd. Of Educ*.,
    103 F.3d 495 (6th Cir. 1996) ..........................................................15

*Galloway v. United States*, 319 U.S. 372 (1943) ......................................3

*Gregory v. City of Louisville*, 444 F.3d 725
    (6th Cir. 2006) ....................................... 2, 4, 5, 8, 9, 10, 15, 16, 19

*Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).........................................15

*J.K.J. v. Polk Cnty*., 960 F.3d 367 (7th Cir. 2020) ..................................11

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ......2-4, 9, 10, 12-16, 19

*Jefferson v. Lewis*, 594 F.3d 454 (6th Cir. 2010) ......................................3

*Jones v. City of Chicago*, 787 F.2d 200 (7th Cir. 1986)....................20, 21

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ..........................23

*Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857
   (6th Cir. 2017) ................................................5

*Marshall v. Rose*, 499 F.2d 1163 (6th Cir.1974) ................................................5

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ......................16, 20, 25

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978)................................................ 2, 3, 4, 10, 14, 23, 27

*Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265
   (6th Cir. 2020) ................................................12, 15

*Richards v. Cnty. of San Bernardino*, 39 F.4th 562 (9th Cir. 2022)........................24

*Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) ................................8, 25

*Sates v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ................................................3

*Suttles v. City of Chattanooga, Tenn.*, 859 F.2d 153 (6th Cir. 1988) ......................20

*Tennessee v. Garner*, 471 U.S. 1 (1985)................................................11

*Tinker v. Sears Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997) ............................ 25

*Tolan v. Cotton*, 572 U.S. 650 (2014) ................................................3, 14

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) ................................20

*United States v. Wade*, 388 U.S. 218 (1967) ................................................5

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4
   (1st Cir. 2005)................................................12

*Zuchel v. City & Cnty. of Denver*, Colo., 997 F.2d 730
   (10th Cir. 1993) ................................................12

<u>Other Authorities</u>

42 U.S.C. § 1983 ................................................20, 21

COMMISSION ON ACCREDITATION FOR LAW ENFORCEMENT AGENCIES, INC.,
   Chapter 33, *Training*................................................7

FED. R. CIV. P. 30(b)(6)................................................. 5, 6, 9, 13, 14, 16, 18, 22, 24

# SUMMARY OF THE ARGUMENT

Repeating errors made below, Miami Township asks this Court to construe the record in its favor, to surmise it had policies that it has never produced, and to translate its denials of liability into facts a jury must accept.

That is not how summary judgment works. At this juncture, the Township must accept the facts in the light most favorable to the nonmovant, which is that an innocent person (Gillispie) was wrongfully convicted due to the constitutionally flawed identification procedures implemented by an untrained and unsupervised rookie detective. The Township must accept that an innocent person was wrongfully convicted due, in part, to the the fact that exculpatory material from Miami Township Police Department files was never produced to him in violation of his constitutional rights. The Township must accept its own discovery responses, and the reasonable inferences from them—including that it lacked policies concerning identification procedures and the production of material information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Township must accept that it has provided no evidence of any specific training ever administered to Moore (or any Township officer) on core duties and obligations that, if lapsed, present an obvious risk of constitutional violations. The Township must accept that its lack of policies and training were deviations from accepted policing standards in 1990.

The Township refuses to accept these facts. Instead, the Township points to *non-sequiturs*, distractions, or even to its favored interpretation of inconsistent testimony as an alternative basis for adjudication. These efforts only confirm that the disputes of fact about the Township's training, policies, and practices—and the lack thereof—are genuine and material. The Township has arguments to make. That is its right. But, the sorts of arguments it wants to make are not for a judge to resolve. They are for a jury. A jury very well could accept the Township's arguments, but it would not be required to do so. As in other analogous cases, *e.g.*, *Jackson v. City of Cleveland,* 925 F.3d 793 (6th Cir. 2019), *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), reversal is warranted. A trial is the forum for resolve the myriad material facts in genuine dispute.

As an optional reply, and given the extensive briefing in this case, this brief is confined to addressing why summary judgment on Gillispie's claim against Miami Township pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) was improper. That the Township must indemnify Moore for the entire judgment against Moore, and that Gillispie is entitled to address adjudicated in the very trial below are amply set forth in Gillispie's prior briefs. Gillispie's verdict against Moore; and Moore's judgment against the Township should be affirmed.

By contrast, and respectfully, remand for trial on the *Monell* is warranted.

# ARGUMENT

## I. Because a Reasonable Jury Can Find For Gillispie on His *Monell* Claim, Remand For Trial Is Required

Basic standards applicable to summary judgment dictate the outcome here. This Court must view the evidence "'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). At summary judgment, a court may not blindly accept the Township's denials as it seeks to evade liability; this Court "must look at the circumstantial evidence that, if believed, would tend to discredit" the Township's account. *Jefferson v. Lewis*, 594 F.3d 454, 462 (6th Cir. 2010); *see also Sates v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010). In considering both direct and circumstantial evidence, "a jury is 'allowed to make reasonable inferences from facts proven in evidence having a reasonable tendency to sustain them.'" *Jackson*, 925 F.3d at 814 (quoting *Galloway v. United States*, 319 U.S. 372, 396 (1943)).

Here, as in *Tolan*, the facts "lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion." 572 U.S. at 659. Accordingly, reversal is warranted.

## II. Properly Construed, the Record Demonstrates A Reasonable Jury Can Easily Find The Township Failed to Provide Needed Training and Supervision and Was Deliberately Indifferent

A reasonable jury can find that (1) the Township failed to train its detectives on *Brady* obligations and in the creation and administration of identification procedures, and (2) such failures amounted to deliberate indifference.

### A. The Record Demonstrates The Township's Abject Lack of Training On Core Constitutional Duties

Municipalities are obligated to train their employees on the constitutional requirements associated with their assigned duties to minimize the risks that the employee will violate the rights of those with whom they come in contact. *See City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997); *Gregory*, 444 F.3d at 753-54. Training must be adequate to minimize the risks of constitutional injury. *Canton*, 489 U.S. at 389-90.

"Evidence pointing to a City's failure to provide *any* training on key duties with direct impact on the constitutional rights of citizens is sufficient to survive summary judgment with a *Monell* failure to train claim." *Gregory*, 44 F.3d at 754.

There is no reasonable dispute that in 1990 "key duties" of detectives investigating and prosecuting serious crimes included an obligation to produce exculpatory information to the accused. *Jackson*, 925 F.3d at 823-25 (6th Cir. 2019) (pointing to case law going back to the 1950s illustrating the police officers

4

who withhold exculpatory evidence violate due process and concluding the *Brady* obligations were clearly established in 1975); *see also Gregory*, 444 F.3d at 754 ("The obligation to turn over exculpatory materials is a significant constitutional component of police duties with obvious consequences for criminal defendants.").

Likewise, there is no reasonable dispute that "key duties" of detectives included administering identification procedures that, if not implemented correctly, could easily lead to mistaken identification and cause wrongful convictions. "Eyewitness identifications are recurring situations in criminal investigations," *Gregory*, 444 F.3d at 756, and the "danger inherent in eyewitness identification has long been a subject of grave concern." *Marshall v. Rose*, 499 F.2d 1163, 1165 (6th Cir.1974); *see also United States v. Wade*, 388 U.S. 218, 228-29 (1967 (recognizing that the "vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification"; and that the "identification of strangers is proverbially untrustworthy").

The Township has produced *zero* evidence of specific training on either *Brady* or photo identification procedures, which the Township itself admitted (via its 30(b)(6) deposition, *see generally* R.277), and that testimony is binding on the Township. FED. R. CIV. P. 30(b)(6); *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 867 (6th Cir. 2017).

Given the Township's brief spends so much space misconstruing the record, some detailed explanation is warranted. The notice for the Township's 30(b)(6) deposition sought testimony on the written polices, if any, and the training, if any, relating to the production of *Brady* material and identification procedures, R.277-1, P.ID.5573-75. At deposition, after admitting it could not identify any written policies on these (and other) topics, R.277-1, P.ID#5455-56. 5460-61, 5507-08, the Township admitted that it could not provide any specific training to its officers in 1990, R.277, P.ID#5508. Here is one excerpt:

> Q: And am I right that the Township's answers with respect to training are the same as what they would have been with respect to the policies, practices, and procedures, in that the Township can't tell us today what the specific training that was provided was?
>
> A. Yes, sir.

*Id.* That answer was consistent with prior written discovery responses—the Township admitted it could not identify its training programs let alone any changes to the department's polices, practices and training programs. R.227-2, P.ID#5586.

The Township's own discovery responses should preclude it from arguing provided any sort of training program to the officers and thus from obtaining summary judgment. At minimum, there is a genuine dispute over the extent of the Township's training on *Brady* obligations to which a reasonable jury could find for the Plaintiff.

There is more.

6

There is substantial evidence from employees in the Township during the relevant timeframe corroborating that the Township did not provide detectives training on what their investigative duties would entail. R.170, P.ID#3485 (Det. Moore); R.221, P.ID#4539 (Sgt. Fritz); R.222, P.ID#4942 (Det. Bailey); R.270, P.ID#8854 (Cpt. Scothorn); R.273, P.ID#9430 (Det. DePietro). Indeed, Moore and other officers testified the Township provided no specific training on how to administer a photo lineup. R. 170, P.ID#3427-28, 2482-83, 3485, 3571 (Moore); R.221, P.ID#4539 (Sgt. Fritz); R.222, P.ID#4942 (Det. Bailey); R.270, P.ID#8854 (Cpt. Scothor); R.273, P.ID#9430 (Det. DePietro).

There is still more.

The record also includes expert testimony that the Township "failed to properly train Detective Scott Moore and other members of the police department in various criminal investigation practices and procedures." R.233-1, P.ID#6766. That lack of training, is "inconsistent with generally accepted police practices and procedures." *Id.* at 6767. In support of this opinion, Plaintiff's expert relied upon police training commissions formed through the collaborative work of many policing organizations, and their publication, identifying training as "one of the most important responsibilities in any law enforcement agency." *Id.* (citing COMMISSION ON ACCREDITATION FOR LAW ENFORCEMENT AGENCIES, INC., Chapter 33, *Training*)

This Court has explained that "[e]specially in the context of a failure to train claim, expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992). The evidence here must be sufficient to clear the summary judgment hurdle—Plaintiff's claim is based on expert testimony in addition to ample other evidence showing the deficiencies in training outlined throughout the record.

This Court's decision in *Gregory* is directly on point. This Court explained that a plaintiff "can survive summary judgment. . . by showing that officer training failed to address the handling of exculpatory materials and that such a failure has the 'highly predictable consequence' of constitutional violations of the sort Plaintiff suffered." 444 F.3d at 753 (6th Cir. 2006) (citing *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir.2003)). This Court recognized that, "[in their investigative capacities, police officers regularly uncover exculpatory materials," such that "[w]idespread officer ignorance on the proper handling of exculpatory materials would have the 'highly predictable consequence' of due process violations." *Id.* There, as here, the municipality argued that its officers acknowledged their duty to disclose exculpatory evidence and even averred that some officers had "testified to training." *Id.* at 753. Regardless, this Court reversed the grant of summary judgment where the plaintiff pointed to expert testimony

that, from industry standards in policing, the training was essentially "nonexistent" and deposition testimony from some officers "generally that they did not receive any instruction" on the production of exculpatory materials. *Id.*

Here, pursuant to the Township's own discovery responses, the Township produced nothing and where it admitted it cannot point to any specific training. Township officers have not identified any specific training on Brady or identifications, either. The Township must accept—as in *Gregory*—the uniform testimony of officers and Plaintiff's expert on this topic. In short, given that the Township has not even produced the sort of evidence found insufficient in *Gregory a fortiori* the evidence here must be insufficient as well.

*Jackson* is controlling as well. There, the municipality denied having insufficient training on *Brady*, and pointed to "deposition testimony to show that officers received official training in their disclosure obligations as well as unofficial on-the-job training in their disclosure obligations." 925 F.3d at 835. The Township cannot point to any similar testimony here, which was already deemed insufficient in *Jackson*. In addition, as in *Jackson*, Plaintiff has provided testimony that conflicts with the Township's "account of the training received, both in the academy and on the job," including testimony showing that there was no training given. *Id.* Indeed, here, Plaintiff pointed to the Township's *own* 30(b)(6) testimony in addition to officer testimony in support of his claims. Again, given that the

Township has not even produced the sort of evidence found insufficient in *Jackson a fortiori* the evidence here must be insufficient as well.

Reversal is warranted.

The Township makes four contrary arguments. Each one must fail.

First, in distracting from the question of whether its *own training* was adequate, the Township argues it cannot be liable essentially because of some testimony from officers that they knew they had taken an oath to follow the constitution. This Court has already rejected this sort of argument. *See Gregory*, 444 F.3d at 754. In addition, the reference to a general obligation to follow the constitution is a *non-sequitur* and inconsistent with Supreme Court precedent. Constitutional obligations are not self-executing. As a result, it was the Township's duty to train detectives on the specifics of the constitutional requirements in situations where a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" is constitutional violations. *Bryan County*, 520 U.S. at 409. The Township's argument cannot be squared with *Bryan County* or *Gregory*.

The Township's argument also contradicts *Canton*, the decision that first acknowledged a failure to train *Monell* theory. 489 U.S. at 389-90. There, the Supreme Court gave an example of a failure to train that can create municipal liability involving patrol officers. Such officers armed with weapons will encounter

10

fleeing suspects who can be stopped with force but who can only be shot in certain situations under *Tennessee v. Garner*, 471 U.S. 1 (1985). *Canton*, 489 U.S. at 390 n.10. Though the Fourth Amendment prohibits "excessive force" the constitutional obligation is not self-executing, and training on such items is necessary and the failure to do so can amount to deliberate indifference because "city policymakers know to a moral certainty" officers will be in these situations. *Id*. The same is true here. The Township knows to a "moral certainty" that detectives investigating and prosecuting people for felonies will encounter *Brady* material which must be produced. The Township knows to a "moral certainty" that detectives will use identification procedures that, unless properly administered, can lead to unreliable, mistaken, and unconstitutional identifications. Training was required beyond the mere oath of office or simply telling Township officers to "follow the law." *Cf. J.K.J. v. Polk Cnty.*, 960 F.3d 367, 384 (7th Cir. 2020) (*en banc*) (municipal actor was not permitted to equip officers "with nothing more than a piece of paper with a flat instruction not to abuse those under their care").

Second, the Township points to the basic police academy course required for all new officers, *i.e.* patrolmen. This argument also fails. For one, the Township has not identified any actual training on the relevant topics in this academy. The mere existence of an academy does not mean any particular topic was taught or even if mentioned that the training was adequate. There are *zero* training

documents in the record that would support any kind of argument that the academy even addressed, let alone adequately, the production of *Brady* material or creation and administration of identifications.

This Court and others have rejected the argument that mere mention of a topic in "initial police academy courses" preclude a finding of failure to train. *Bordanaro v. McLeod*, 871 F.2d 1151, 1160 (1st Cir. 1989). As just noted, *Jackson* rejected reference to a police academy as determinative on a *Brady* claim. 925 F.3d at 835. This Court additionally reached the same result in *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265 (6th Cir. 2020). There, despite an officer testifying to specific training at an academy, this Court found the failure to provide any training as to "recurring situations may amount to deliberate indifference" and was "constitutionally inadequate." *Id.* at 289.

Indeed, while relevant, even some evidence of academy training—which is not present here—cannot be is not independently sufficient to warrant summary judgment. *See*, *e.g.*, *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4 (1st Cir. 2005) (adequacy of academy training was factual dispute for resolution at trial); *Zuchel v. City & Cnty. of Denver*, Colo., 997 F.2d 730, 738–39 (10th Cir. 1993) (lecture series at the police academy was insufficient to constitute adequate training); *Bordanaro*, 871 F.2d at 1160.

At minimum, because the Township has not—and cannot—point to any specific training on the relevant topics given at any academy, a material dispute of fact exists on this issue, precluding judgment as a matter of law.

Third, in contradicting its own 30(b)(6) testimony, the Township now claims that new detectives received training by shadowing more experienced officers. At minimum, this is itself a factual dispute that cannot be sufficient to obtain summary judgment. For one, there is a dispute as to whether this occurred at all, R.273, P.ID#9476, and what it entailed. And, as in *Jackson*, some general claim that officers were shadowing other detectives who themselves may not have been given adequate training does not prove that the Township's training was adequate, 925 F.3d at 835-36. Rather, a jury could find that this evidence proves that the lack of training was systemic, that this informal, undefined, and speculative on-the-job training did not adequately address how to preserve or disclose exculpatory evidence and did it train officers on how to properly administer a non-suggestive photo identification or even identify the suggestive elements in the situation.

Finally, in another attempted departure from its discovery responses, Township argues that the existence of a form (the "Photographic Identification General Guidelines" and "Photographic Show-Up Instructions") somehow serves as proof of training. It is to pile inference upon inference *against* Plaintiff to infer that the existence of a one-page form proves both a policy and training on the

supposed policy when, in fact, there is testimony from the officers involved and the Township itself that there was zero actual training. This maneuver is forbidden at summary judgment. *Tolan*, 572 U.S. at 659.

Even assuming *arguendo* these documents are reflective of some training, summary judgment remains improper. Training must be *adequate* to the purpose. Again, that is the upshot of *Jackson*; summary judgment was improper a *Monell* claim concerning failure to train on *Brady* obligations even though the City there pointed to some written document (a police manual) reflective of training, because there were disputes of fact about the extent of training actually provided. 925 F.3d at 835-36. At minimum, the same is true here. The Township has not produced a training manual whatsoever. The disputes here are from the testimony of not just Moore and other department officers (which was the case in *Jackson*) but the additional evidence from the Township's own discovery responses and 30(b)(6) testimony and Plaintiff's expert analysis. The evidence shows that the Township's problems with not training Moore were no mere one-off; they reflect inadequate training across the department.

At minimum, there is "therefore a genuine issue of material fact as to whether [Miami Township's] training of its officers in their disclosure obligations was sufficient, and summary judgment was inappropriate as to this issue. *Jackson*, 925 F.3d at 836.

**B. A Jury Can Find The Township Was Indifferent to the Obvious Need For Training on How To Implement Basic Constitutional Guarantees.**

Plaintiff acknowledges that deliberate indifference must be shown on a failure to train claim. However, "deliberate indifference is a question best suited for a jury," *Darrah v. Krisher*, 865 F.3d 361, 370 (6th Cir. 2017). The existence of deliberate indifference is therefore typically "not for the court at the summary judgment stage." *Doe v. Claiborne Ctny., Tenn. By & Through Claiborne Ctny. Bd. Of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) (citing *Hicks v. Frey*, 992 F.2d 1450, 1456-57 (6th Cir. 1993)); *see also Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004) (whether "a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question").

That is particularly so on the record here. Given what the Supreme Court and this Court have said about *Brady* obligations and identification procedures, the failure to implement a training regime on these constitutionally significant and recurring situations is sufficient to permit a reasonable jury to find deliberate indifference. *Canton*, 489 U.S. at 390 n.10; *Bryan County*, 520 U.S. at 409; *Gregory*, 444 F.3d at 754. The need for training on these topics is obvious; the complete absence of training bespeaks deliberate indifference. *Jackson*, 925 F.3d at 835-36; *Ouza*, 969 F.3d at 289.

Extensive further discussion of the Township's arguments is unwarranted. Instead, it is sufficient to say the Township's efforts to distinguish *Gregory* and *Jackson*, both of which reversed a grant of summary judgment on analogous claims, must fail. Plaintiff's claims here are far strong than *Gregory* and *Jackson*— the evidence includes the testimony of several officers, the testimony of the Township's own 30(b)(6) designee, expert testimony, and the complete absence of any training standards ever implemented in the relevant time frame. The Township has never produced a single document purporting to be a policy on *Brady* and the Township's position about the existence of policies for identification procedures are inconsistent. The Township's own discovery responses, at minimum, create disputes of material fact as to the Township's liability consistent with *Gregory* and *Jackson* because, as in those cases, the evidence is disputed. The Township's arguments otherwise construe the record against Plaintiff and rely upon inferences in the Township's favor, which is forbidden at summary judgment.

### III. A Jury Can Easily Find The Township Failed to Adequately Supervise Moore and Was Indifferent to The Need to Supervise Him In Particular

Municipalities are obligated to adequately supervise their employees. *Moldowan v. City of Warren*, 578 F.3d 351, 393 (6th Cir. 2009). Municipalities may be liable where they fail in this duty. *Gregory*, 444 F.3d at 752. Like the

failure to train, when municipalities fail to adequately supervise employees and the danger of constitutional harm is apparent a jury can find deliberate indifference. *Id.*

As with its other arguments, the Township's construes the record against Plaintiff, which impermissible at this juncture. Properly construed, there is sufficient evidence both that (1) the Township had notice that Moore required supervision, and (2) that Moore was not adequately supervised.

As to notice, Moore was a rookie detective who admittedly had never been trained on how to conduct a photo identification nor how to comply with his obligations under *Brady*. R. 170, P.ID#3427-28, 2482-83, 3485, 3571. In addition, Sgt. Fritz informed MTPD supervisors that Moore was a "cowboy," meaning he was often "over aggressive and would try to cut corners." R.234-1, P.ID#6968; *see* R.221, P.ID#4561-62 (testifying about Moore's overzealousness in relation to the notion of him being a "cowboy cop").[1] Sgt. Fritz further indicated that Moore would "create his own cases" and needed to be reigned-in. R.233-1, P.ID#6773-75. Indeed, at one point Moore was kicked off of an inter-agency task-force because he refused to follow the rules of that command structure to assert his own "independence" R.271 P.ID#9001-03

---

[1] Corporal Bailey provided a different interpretation of the "cowboy" moniker, but really had very little memory about this topic. At summary judgment, Fritz's account must be credited.

In addition, before leaving the Department, Sgt. Fritz, informed the Chief of Police that Moore required supervision *specifically if he were going to be assigned to the investigation at issue in this case* for which Gillispie was wrongfully convicted. R. 221, PageID#4564-65. Supervision was necessary to ensure that he would "not go off doing his own stuff," R. 221, PageID#4565.

Despite all of this notice, the Chief of Police, Thomas Angel, assigned Moore to the Best Product rapes and did not provide Moore any meaningful supervision. Moore's direct supervisor, Sgt. Tim Wilson testified he was not required to supervise Moore in the creation of photo lineups, R.271, P.ID# 8990, creating case notes, *id.* at P.ID# 8970, 9041, the conduct of the investigation, *id.* at P.ID# 9019, Moore's decision to arrest Gillispie, *id.*, nor the production of reports and supplemental reports per *Brady*. *Id.* at P.ID# 8993, 9009, 9023. In addition, consistent with Wilson's testimony, and contrary to Fritz's warning to the Township's policymaker (Chief Angel), Moore provided testimony about his lack of supervision, including that Wilson would allow detectives to "handle their own investigations," rather than be closely supervised. R.170.P.ID#3432; *see also* R.170, P.ID#3435 (not required to turn in supplemental reports to supervisor during investigation); *id.* at P.ID#3449 (no direct supervision by chief or captain).

The Township's discovery responses are relevant and preclude summary judgment here, too. At the 30(b)(6) deposition, the Township admitted it could not

provide any evidence of the actual manner, if any, by which detectives were supervised in 1990. *See* R.227, P.ID#5494-95 ("Q: So can you describe for me the manner in which . . . Miami Township Police Department detectives were supervised by their lieutenants or sergeants in 1990 and 1991. A: No, Sir. …"). The Township could not state whether it would have been inconsistent or consistent with policy for someone—like Wilson did—not to "directly participate or follow along in that detective's investigation." *Id.* P.ID#5495. The Township cannot describe the supervision Moore should have received by his direct supervisor (Wilson) nor anyone up the chain of command in the department. *Id.* at 5496-97.

As above, Plaintiff's claim is also supported by expert testimony. The Township's supervision of officers was inconsistent with generally accepted police practices at the time. That analysis shows the Township "failed to properly supervise its members, particularly Detective Scott Moore" and that the scant supervision "was inconsistent with generally accepted police practices and procedures." R.233-1, P.ID#6773. *see id.* at 6774-76 (basis for opinion includes testimony of Wilson, Scothorn, Fritz, Moore and Moore's lack of experience).

As established above, and consistent with *Gregory* and *Jackson* (and other authorities) both the handling of exculpatory evidence and photo identifications are key duties of officers for which there are known risks to the constitutional rights of

the accused. As a matter of practice, despite being on general notice of Moore as a cowboy and specific notice for this investigation, the Township failed to supervise Moore. [2] On this record, a reasonable jury could find the Township's failure was deliberately indifferent. At minimum, disputes of fact preclude judgment as a matter of law.

### IV. A Reasonable Jury Could Also Find Indifference In The Township's Failure To Implement Practices or Other Procedural Rules In the Absence of Necessary Policies and Procedures

A municipality must have actual policies to guide its officers in order to prevent constitutional violations. *Moldowan*, 578 F.3d at 393 (citing *Canton*, 489 U.S. at 390). As with other Circuits, this Court has recognized that municipal "[f]ailure to make policy may be actionable under section 1983." *Suttles v. City of Chattanooga, Tenn.*, 859 F.2d 153 (6th Cir. 1988) (unpublished) (citing *Jones v. City of Chicago*, 787 F.2d 200, 204-05 (7th Cir. 1986)); *see also Avery v. Burke Cnty.*, 660 F.2d 111, 114 (4th Cir. 1981) ("Official policy may be established by the omissions of supervisory officials as well as from their affirmative acts."); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-44 (9th Cir. 2012) (failure to enact policy requiring casino departments to communicate over individuals banned from

---

[2] The Township's claim that Plaintiff is trying to "blame" Chief Angel is misplaced. Plaintiff pointed out that the municipal policy maker—Chief Angel— had specific notice of the need to supervise Moore but took no actions to ensure this was done.

casinos and individuals invited to casinos because they are repeat players was deliberately indifferent); *Armstrong v. Squadrito*, 152 F.3d at 564, 577 (7th Cir. 1998) (a "failure to select or implement necessary practices resulting in a constitutional violation" is an actionable claim under Section 1983) (internal quotation omitted).

As the Seventh Circuit put it in *Jones*—the case this Court favorably cited in *Shuttles*—in "situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." 787 F.2d at 204. The standards are basically the same as other forms of municipal inaction, like a failure to train. *Id.* A municipality can be liable where there is evidence it failed to do so and doing so was deliberately indifferent, including by showing that action was obviously necessary or the risk of inaction highly predictable or, for example, through a pattern of violations. *Id.*

This claim must proceed to the jury both concerning *Brady* and identification procedures because a reasonable jury can find a lack of policies and deliberate indifference.

## A. The Township Lacked Any Written *Brady* Policies or Procedures

As to *Brady*, the Township had *zero* written policies concerning the production of exculpatory information to criminal defendants. In written discovery, Plaintiff asked the Township to identify whether it had any policies about the

obligation to "produce and disclose exculpatory evidence, in effect during the Best Products investigation. R.227-2, PID#5584. The Township identified none. *Id.* The Township confirmed this at its 30(b)(6) deposition. *See, e.g.*, R.227, P.ID# 5503 (the Township had no policies explaining officers' *Brady* obligations).

Plaintiff's police-practices expert provided the Township "provided little to no written policies and procedures for its members to properly carry out their law enforcement duties." R.233-1, P.ID#6769. As the expert explains, an absence of policies can create "an environment where [MTPD] members engaged in improper practices and procedures while carrying out their law enforcement duties" and failing "to provide comprehensive written policies and procedures to members of the Miami Township Police Department is inconsistent with generally accepted police practices." *Id.* Indeed, a tenant of basic policing is that agencies have formal written directive systems to *guide* officers to ensure that agency personnel have a clear understanding of what their duties are. *Id.* P.ID#6770 (emphasis added).

Yet, the Township had no policies or procedural safeguards for ensuring the production of exculpatory evidence was made. Instead, evidence in the record indicates that (1) reports were "frequently misfiled" at the Township, Doc. 233-1, P.ID#6761-62, and (2) that exculpatory material in the form of the victim's clothing (which may have included the perpetrator's semen) was destroyed due to the absence of a policy requiring retention of this important exculpatory evidence.

*Id*. P.ID#6759. These lapses were departures from established policing standards of the time. *Id.*

For the same reasons that training is necessary and important on the production of *Brady* materials, it is vital that the Township have procedural safeguards to ensure the production of information to criminal defendants. In particular, frequent or routine practices that suppress files at the police department violates the constitution. *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).

It bears mention that the preservation and production of exculpatory information is the exact sort of violation for which the absence of a municipal policy can be a cause even if an individual officer is not liable. Here, for example, the Fritz/Bailey supplementary reports were never disclosed to Gillispie. Moore has argued he never saw such reports, and he has pointed out that documents were frequently misfiled. If that is the case, then it is the City's own failure to implement policies that accounts for that sort of *Brady* violation, and not the individual misconduct of any one person. Indeed, a claim asserting that "the lack of any training or policy on *Brady*" by a police agency "resulted in critical exculpatory evidence being withheld by the prosecution" is the type of *Monell* claim "not premised on a theory of liability that first requires a finding of liability on the part

of the individual officers." *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 574

(9th Cir. 2022). Summary judgment should not have been entered on this claim.

**B. Despite The Township's Own Inconsistent Testimony, A Reasonable Jury Can Conclude The Township Lacked Written Policies Concerning Identification Procedures**

A reasonable jury could also conclude the Township had no written policies

concerning photographic identifications. Here, again, the primary evidence is the

Township's own discovery responses. In written discovery, Plaintiff asked the

Township to identify whether it had any policies about how to "conduct and

document and/or memorialize photo or live lineups." R.227-2, PID#5584. The

Township identified none. *Id.* The Township confirmed this at its 30(b)(6)

deposition. R.227, P.ID# 5486-87 (the Township had no policies on conducting

and documenting live lineups). Plaintiff's expert also opined about this topic.

R.233-1, P.ID6769-80.

The Township changed its tune by summary judgment. Then, it claimed, and

the trial court mistakenly accepted, that it actually did have a written policy, which

just so happened to be the single form Moore utilized in this case. R.260,

P.ID#8442. It would be error to accept this version of events. Instead, a reasonable

jury can accept the Township's original response on this issue (that it had no

policies) rather than its later characterization (that a single form was its policy).

The Township's inconsistent positions on this issue create a genuine issue of

material fact as to whether the Township actually had any policies or not. *Tinker v. Sears Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) (finding the "inconsistency" of the defendant's testimony "highlights the presence of a material issue of fact"). The Township's conflicting answers are exactly why there are genuine issues for a jury to resolve. A jury must decide whether the Township had formal policies. If they did not, then the Township must have been deliberately indifferent. *See Moldowan*, 578 F.3d at 393.

## C. The Township's Contrary Argument's Fail

The Township's objections to liability suffer the same failings identified above. The Township's argument that the officers all understood their constitutional obligations remains a *non-sequitur*. Whether the Township's failure to have any sort of procedural rules was deliberately indifferent is a jury question. The Township's own discovery responses, testimony of its officers, and of Plaintiff's experts must be construed in Plaintiff's favor. When that is done, a reasonable jury can easily find liability. Summary judgment cannot be granted in that circumstance. *Russo*, 953 F.2d at 1046–1047.

Because there are factual disputes regarding what training—if any—MTPD police officers received, this Court's precedents instruct that a reasonable jury could find that the Township was deliberately indifferent.[3]

---

[3] On further consideration of the record, Plaintiff agrees that the Township cannot, at this juncture, be liable on a ratification theory. Thus, while reversal is warranted on the failure to train, failure to supervise, and inadequate policies theories, Plaintiff is no longer pursuing a ratification claim.

## CONCLUSION

Because a reasonable jury can find for Gillispie on his *Monell* claim against the Township, judgment as a matter of law should not have been entered and that decision should be respectfully reversed for a trial on that claim.

At the same time, Gillispie's verdict against Moore and Moore's judgment against the Township should be affirmed.

Respectfully submitted,

**DEAN GILLISPIE**

By:  /s/ David B. Owens

Mike Kanovitz
David B. Owens
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
david@loevy.com
*Attorneys for Dean Gillispie*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count of this document is 5,807 using double-spaced, Times New Roman, 14-point font, in Microsoft Word 365 format, in compliance with Federal Rules of Appellate Procedure 27 and 32.

/s/ David B. Owens
*One of Dean Gillispie's Attorneys*

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, certify that, on November 22, 2024, I caused

the foregoing Brief to be filed via the Court's CM/ECF system, which effected

service on all counsel of record.

/s/ David B. Owens
*One of Dean Gillispie's Attorneys*

| Record Entry Number | Document Description | Page ID# Range |
|---|---|---|
| 170 | Transcript of Matthew Scott Moore Deposition | 2482-83, 3427-28, 3432, 3435, 3449, 3485, 3571 |
| 221 | Transcript of Steven Fritz Deposition | 4539, 4561-62, 4564-65 |
| 222 | Transcript of Gary Lee Bailey Deposition | 4942 |
| 227 | Transcript of Ronald Hess Deposition (City of Miami Township 30(b)(6) Designee) | 5486-87, 5494-97, 5503 |
| 227-2 | Defendant, Miami Township, Ohio's Answers To Plaintiff's First Set Of Interrogatories | 5584 |
| 233-1 | Declaration of Andrew Scott | 6759, 6761-62, 6766, 6769-80 |
| 234-1 | Affidavit of Steven Fritz (2/26/2007) | 6968 |
| 260 | Miami Township's Motion for Summary Judgment | 8442 |
| 270 | Transcript of Marvin Scothorn Deposition | 8854 |
| 271 | Transcript of Tim Wilson Deposition | 8970, 8990, 8993, 9001-03, 9009, 9019, 9023, 9041 |
| 273 | Transcript of John DiPietro Deposition | 9430, 9476 |
| 277 | Transcript of John Wixted Deposition | 5508 |
| 277-1 | Report of Dr. Wixted dated 6/20/19 | 5455-56, 5460-61, 5507-08, 5573-75 |
| 277-2 | Supplemental report of Dr. Wixted dated 6/28/19 | 5586 |