CASE NOS. 23-3999, 23-4000, 23-4001

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

ROGER DEAN GILLISPIE

Plaintiff - Appellee Cross-Appellant [23-4001]

v.

MIAMI TOWNSHIP, OH

Defendant

MIAMI TOWNSHIP, OH, BOARD OF TRUSTEES

Intervenor - Appellant Cross-Appellee

MATTHEW SCOTT MOORE

Defendant - Appellee Cross-Appellant [23-4000]

Appeal from the United States District Court for the
Southern District of Ohio, Western Division
CASE NO. 3:13-CV-00416-TMR

---

**INTERVENOR - APPELLANT CROSS-APPELLEE MIAMI TOWNSHIP
BOARD OF TRUSTEES' MOTION TO STAY THE MANDATE**

---

Respectfully submitted,

/s/ Jeffrey T. Cox
Jeffrey T. Cox (0055420)
Brian D. Wright (0075359)
Melinda K Burton (0064618)
Morgan K. Napier (0099190)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH  45402
Telephone:  (937) 227-3704
Fax:  (937) 227-3717
Email:  jcox@ficlaw.com
       bwright@ficlaw.com
       mburton@ficlaw.com
       mnapier@ficlaw.com

Attorneys for Miami Township Board of
Trustees

Pursuant to Fed. R. App. P. 41(d)(1) and 6 Cir. R. 41, Intervenor-Appellant Cross-Appellee Miami Township Board of Trustees ("Township") moves to stay the mandate pending the filing and disposition of a petition for writ of certiorari in the United States Supreme Court. The Township's petition would present substantial questions, and there is good cause for a stay.

I.      THE TOWNSHIP'S PETITION FOR WRIT OF CERTIORARI
        WOULD PRESENT SUBSTANTIAL QUESTIONS

This case presents substantial questions regarding a federal court's interpretation of the Ohio Political Subdivision Tort Liability Act (R.C. Chapter 2744) ("Act") and in particular, R.C. 2744.07(B), the provision that requires a political subdivision to indemnify an employee for a judgment rendered against the employee for violation of a plaintiff's civil rights brought under 42 U.S.C. § 1983. Despite the exceptional nature of this case, including the largest civil rights verdict handed down in the State of Ohio, the Panel chose to not consider the constitutional challenges to the statute or whether it was necessary to certify questions to the Ohio Supreme Court on the interpretation and constitutionality of R.C. 2744.07(B) and its interplay with federal Section 1983 claims and with other sections of the Act.

Instead of seeking guidance from the Ohio Supreme Court, the Panel reached a decision interpreting the employee indemnification provision in R.C.

2744.07(B) despite its constitutional infirmities, including vagueness and the fact

that it creates de facto *respondeat superior* liability prohibited by federal law

(*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978)), and, rejecting

this Circuit's controlling federal law (*Moldowan v. City of Warren*, 578 F.3d 351

(6th Cir. 2009)) and controlling Ohio Supreme Court precedent (*Ayers v. City of

Cleveland*, 160 Ohio St. 3d 288, 2020-Ohio-1047, 156 N.E.3d 848).

> A.    Substantial Questions Would be Presented Regarding the
>        Constitutional Challenges and Request to Certify Questions to
>        the Ohio Supreme Court

First, the Township's petition for writ of certiorari would raise

substantial questions regarding the Panel's refusal to consider the constitutional

challenges the Township presented under Fed. R. Civ. P. 5.1 and the Panel's

decision not to certify questions to the Ohio Supreme Court on the interpretation

and constitutionality of R.C. 2744.07(B), including the amount the Township must

indemnify Defendant – Appellee Cross-Appellant Matthew Scott Moore ("Moore")

and the process and procedure for doing so, and how R.C. 2744.07(B) interplays

with other sections of the Act and with federal Section 1983 claims.  Ohio

S.Ct.Prac.R. 9.01(A) and 5.04(A); *Arizonans for Official English v. Arizona*, 520

U.S. 43, 77-79 (1997) ("[C]ertification of novel or unsettled questions of state law

for authoritative answers by a State's highest court" is favored because it "may save

time, energy, and resources and help build a cooperative judicial federalism" as

well as avoid the potential for friction-generating error.). *Accord*: *McKesson v. Doe*, 592 U.S. 1, 141 S. Ct. 48 (2020) (petition for writ of certiorari granted; judgment vacated and remanded to the Fifth Circuit to certify questions of state law to Louisiana Supreme Court).

> "[C]ertification is not an argument subject to forfeiture by the parties. It is a tool of the federal courts that serves to avoid 'friction-generating error' where a federal court attempts to construe a statute 'not yet reviewed by the State's highest court.'… This Court has certified questions to a state court, 'sua sponte, even though the parties had not sought such relief and even though the district court and court of appeals previously had resolved the disputed point of state law.'… Respondents' delay in asking for certification does nothing to alter this Court's responsibility as a matter of state-federal comity to give due deference to the state courts in interpreting their own laws."

*Minn. Voters All v. Mansky*, 585 U.S. 1, 28-29, 138 S. Ct. 1876 (2018) (Sotomayor, J., dissenting).

The Township raised in its Motion to Certify Questions of State Law to the Ohio Supreme Court (Doc. 19) several critical unanswered questions regarding the Act and interpreting R.C. 2744.07(B), particularly in the context of a Section 1983 action, but the Panel did not certify the questions, and instead entered a decision that the Township contends reinforces the unconstitutionality of R.C. 2744.07(B) and why guidance from the Ohio Supreme Court should have been sought or the constitutional challenges addressed head-on.

3

The Township was found as a matter of law not liable to Plaintiff – Appellee Cross Appellant Roger Dean Gillispie ("Gillispie") for any civil rights violation in the underlying litigation, and yet now has been ordered to indemnify Moore for the entire judgment entered against him for <u>his</u> civil rights violations via R.C. 2744.07(B).  This result effectuates the imposition of federally forbidden de facto *respondeat superior* liability on the Township, rendering the statute unconstitutional.  As the Township argued in its briefing, application of R.C. 2744.07(B) under the facts of this case violates the Supremacy Clause of the United States Constitution because it results in impermissible de facto *respondeat superior* liability against the Township.  "Under the doctrine of *respondeat superior*, an employer is liable, despite having no fault whatsoever, for the acts of its employees taken within the scope of their employment." *Hamilton v. Carell*, 243 F.3d 992, 1001 (6th Cir. 2001).  But *respondeat superior* liability under Section 1983 is absolutely prohibited by federal law.  *Monell*, 436 U.S. 658.  The Supreme Court has clearly and consistently mandated that rigorous standards of fault and causation remain in all Section 1983 cases to avoid de facto *respondeat superior* liability on municipalities.  *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197 (1989).  *Monell* is federal law that establishes when, and only when, a political subdivision can be held responsible for a Section 1983 violation.  Ohio cannot override, either directly or indirectly, this federal law.  That

4

is exactly what R.C. 2744.07(B) does, however.  Under the Ohio indemnity statute, the Township, a party that has not committed any constitutional violation, is being ordered to pay its employee Moore an uncapped judgment for his constitutional violations, creating de facto *respondeat superior* liability.

R.C. 2744.07(B) also is unconstitutional because it is silent on the process and procedure a political subdivision must follow to pay indemnification to the employee.  Even though Ohio's General Assembly knows how to provide such processes and procedures for indemnification in situations where the state treasury will be implicated, it failed to do so here.  Ohio Supreme Court Justice Stewart pointed out in her dissent in *Ayers*, 2020-Ohio-1047 at ¶¶30-32:

> "how is the political subdivision's indemnification obligation invoked?...  R.C. 2744.07[(B)(2)] does not contain any language establishing a procedure for an employee to invoke the city's indemnification obligation. The Ohio General Assembly clearly knows how to establish such procedures.  *See, e.g.,* R.C. 9.87(E) (establishing the procedure for invoking indemnification for judgments against state officers and employees incurred in the performance of official duties); R.C. 9.871(C) (establishing the procedure of invoking indemnification for the cost of legal representation of employees of the Department of Rehabilitation and Correction in connection with the dismissal or acquittal of criminal charges for actions that occurred within the course and scope of employment); R.C. 120.41(B)(2) (establishing procedure for invoking indemnification of

public defenders in connection with malpractice actions)."[1]

Unlike R.C. 9.87, 9.871, and 120.41, all of which contain highly detailed procedures for the state to meet its indemnification obligation, including procedures for appropriating funds to meet the obligation, R.C. 2744.07(B) is silent, rendering it unconstitutionally vague and void.

Finally, the Panel should have certified questions to the Ohio Supreme Court regarding how R.C. 2744.07(B) works in conjunction with the other provisions in the Act when it is part of a federal civil rights action.  The Act contains multiple sections that provide critical fiscal protections to political subdivisions, including R.C. 2744.05, which caps damages for intangible losses, and R.C. 2744.06, which protects a subdivision's property from execution and establishes procedures by which the political subdivision may satisfy certain judgments against it, but under R.C. 2744.09(E) these provisions do not apply in federal civil rights cases:  "This chapter does not apply to, and shall not be construed to apply to, the following: (E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of

---

[1] Justice Stewart also stated, "in the absence of a statutory procedure, and as the majority suggests by reference…at ¶ 22, a political subdivision could fulfill its indemnification obligation by reimbursing an employee who pays a judgment." *Id.* at ¶33.

section 2744.07 the Revised Code shall apply to such claims or related civil actions."

R.C. 2744.05 states: "[n]otwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function," the political subdivision's liability is limited to "actual loss of the person who is awarded the damages" and damages that do not represent "actual loss" (such as intangible losses like pain and suffering and mental anguish) are capped at $250,000.

Given the qualifying language—"[n]otwithstanding any other provisions of the Revised Code or rules of a court to the contrary"—a strong argument can be made that the damages limitations in R.C. 2744.05 would still apply to Section 1983 actions brought directly against political subdivisions, notwithstanding R.C. 2744.09(E), because R.C. 2744.05 enacted in 2013 is more recent (R.C. 2744.09(E) was enacted in 1985) and more specific. *See Summerville v. City of Forest Park*, 128 Ohio St. 3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶¶25, 30 (finding that an order denying federal immunity in a Section 1983 case was a final appealable order under R.C. 2744.02(C), despite R.C. 2744.09(E),

7

because R.C. 2744.02(C) covers denials of immunity "under any provision of law," and it is "the more recent and more specific statute" and therefore prevails).

However, even if R.C. 2744.09(E) does not exclude R.C. 2744.05, it remains unclear whether the limitations in R.C. 2744.05 apply to Section 1983 claims against a political subdivision's employees because R.C. 2744.05 applies only to "an action against a political subdivision" not to "an action against a political subdivision and any of its employees." *See Zumwalde v. Madeira & Indian Hill Joint Fire, Dist.*, 128 Ohio St. 3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶22. Under the Act, if a political subdivision was an actual wrongdoer, then its liability is capped; but if the political subdivision's employee is the wrongdoer who must be indemnified, the subdivision's liability is uncapped, subjecting it to potential financial ruin.

As shown above, it is unclear if R.C. 2744.05 and 2744.06 apply in this case given R.C. 2744.09(E) and the particular facts of this case—the $45 million judgment was entered against Moore (not the Township) for federal civil rights violations, the majority of the $45 million award represents intangible losses, and the Township has been ordered to indemnify Moore the entire amount under R.C. 2744.07(B). It is precisely for these reasons—lack of clarity and the glaring inconsistencies that may be imposed upon a political subdivision with respect to

8

damages for which it is liable under R.C. 2744.05 and its indemnification

obligation to employees under R.C. 2744.07(B) if R.C. 2744.05 or R.C. 2744.06

are inapplicable—that these questions should have been certified to the Ohio

Supreme Court.

> B.    Substantial Questions Would be Presented on the Statutory
> Construction of the Good Faith/Scope of Employment
> Requirements of R.C. 2744.07 in a Section 1983 Case

Second, the Township's petition would present substantial and

important unanswered federal and state law questions concerning the statutory

construction and interpretation of R.C. 2744.07(B) in context and conjunction with

a Section 1983 case such as this, where the employee of a political subdivision has

committed civil rights violations that can never be done in good faith under

controlling federal law.

The Panel affirmed the District Court's order that the Township must

indemnify Moore for his civil rights violations pursuant to R.C. 2744.07(B), even

though the statute requires the employee to have been acting in good faith and

within the scope of his employment.  Moore's acts in violation of Section 1983

were active, knowing and intentional ones that could never be done in good faith

under *Moldowan*, 578 F.3d 351.  Indeed, under the evidence presented at trial and

the controlling law (*Moldowan*), no reasonable jury could have determined that

Moore was acting in good faith or within the scope of his employment or official

responsibilities when he took the unconstitutional actions the jury found he took against Gillispie.[2]

The Panel dismissed *Moldowan* as irrelevant, even though *Moldowan* held that some violations (including the ones committed by Moore) can never be done in good faith or "in accord with their normal practice." *Moldowan* at 383, 388-89; *D'Ambrosio v. Marino*, 747 F.3d 378, 390 (6th Cir. 2014). The Township asserts this was error. The jury's verdict on Gillispie's constitutional claims and the jury's answers to special interrogatories rest on the same material facts. As a result, the jury's answers to the special interrogatories must be viewed through the lens of the federal law (*e.g., Moldowan*) that governs the constitutional claims. *Wilson v. Gregory*, 3 F.4th 844, 860-61 (6th Cir. 2021) (it is well-settled in this Circuit that "when federal qualified immunity and Ohio state-law immunity under R.C. 2744.03(A)(6) rest on the same questions of material fact, [the Court] may review the state-law immunity defense through the lens of the federal qualified immunity analysis."). *Accord*: *Harris v. Langley*, 647 F. App'x 585, 592-93 (6th

---

[2] Part of Gillispie's case was that Moore suppressed evidence. At trial, Moore testified to the jury that he knew everything had to be turned over to the prosecution and that he turned everything over. To find that Moore violated Gillispie's civil rights by suppressing evidence, the jury necessarily had to not believe Moore or thought he was not telling the truth. If Moore was lying, he could not have been acting in good faith.

Cir. 2016) (denying state law immunity for state law claims viewed through the lens of federal immunity; "there is no justification for either the body slam or the detention; accordingly, there is no state-law immunity from the claims arising of those actions because they were done in bad faith and in a wanton and reckless manner [a]s a matter of law….").

In addition, Section 1983 does not recognize any federal indemnification right. *Dempsey v. City of Lawrenceburg*, No. 3:09-33-DCR, 2010 U.S. Dist. LEXIS 97579, at *6-7 (E.D. Ky. Sept. 17, 2010); *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145-46 (N.D. Cal. 2015). Since there is no federal right to indemnification, if the Court is going to allow state law indemnity to apply to the Section 1983 claim here, interpreting the Ohio statute to accord with federal law must be done to ensure, as the Constitution requires, that any indemnity of a guilty party by a party that is not culpable is consistent with federal civil rights law.

C.    Substantial Questions Would be Presented Regarding the Interpretation of R.C. 2744.07(B) and the Amount the Township Must Indemnify Moore

Third, the Township's petition would present substantial questions regarding the Panel's decision on the amount the Township must indemnify Moore. Although the Township requested the Panel to certify the question to the Ohio Supreme Court, the Panel did not do so and instead entered its decision that the Township must indemnify Moore the full $45 million judgment, even though he is

11

unable to pay Gillispie the full amount of the judgment.  The Panel's decision (and the reasoning behind it) eviscerates (1) the overarching, explicitly stated purpose of the entire Act—which is to protect the fiscal resources and financial stability of the political subdivision—and (2) the only explicitly stated purpose of the indemnification provision in R.C. 2744(B)—which is to protect the <u>employee</u> from harm, not any third party or judgment creditor of the employee.

When Ohio's General Assembly enacted the Act, it stated that "the <u>protections afforded to political subdivisions and employees</u> of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents." *Summerville*, 2010-Ohio-6280, ¶38.  "[<u>T]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions</u>." *Id*. (emphasis added).

With regard to the indemnification provision in R.C. 2744.07(B), the General Assembly enacted that provision to protect the employee, not to provide an avenue for a third party or judgment creditor to collect a judgment.  *Ayers*, 2020-Ohio-1047, ¶8 citing *Ayers v. City of Cleveland*, 2017-Ohio-8571, ¶31 (Ct. App.) ("<u>the purpose of [R.C. 2744.07(B)] is not to benefit third parties injured by</u>

the acts of a state employee but to shield the employee from financial ruin that may result from an act the employee committed in good faith within the scope of employment.") (emphasis added); *id*. at ¶21 (the statute "serves only to indemnify an employee and does not vest any rights in third parties connected to the employee").

In reaching its decision, the Panel rejected the Township's argument that the Ohio Supreme Court decision in *Ayers* supported the Township's position that its indemnification obligation to Moore is the amount he pays toward the judgment. While the Panel dismissed *Ayers*, the Ohio Supreme Court's opinion in *Ayers*, however, states the law.

*Ayers* set forth and emphasized the following points of Ohio law: Under R.C. 2744.07(B), "the right of indemnification is personal to the employee." *Id*. at ¶21. "The limited nature of this indemnification right is underscored by what the statute does not say. For example, the statute does not provide that a political subdivision shall indemnify any judgment against an employee." *Id*. (emphasis added). "[I]ndemnification is a personal right rather than a right that may be enforced by a third party. *See Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987)." *Id*. at ¶22 (emphasis added). "As this court explained in *Worth*, indemnification exists to 'make whole' the person who is

indemnified." *Id.* at ¶23 (emphasis added). <u>Indemnification under the statute</u> <u>"does not exist to benefit a third party."</u> *Id.* (emphasis added). <u>In fact, R.C.</u> <u>2744.07 "does not vest any rights in third parties connected to the employee."</u> *Id.* at ¶21 (emphasis added).

      The Township's construction of R.C. 2744.07(B) fulfills the stated purpose of the Act as a whole and the purpose of R.C. 2744.07(B) itself; it also respects federal law that prohibits *respondeat superior* liability, and strictly limits when a political subdivision is liable under Section 1983. Considering that the purposes of R.C. Chapter 2744 and R.C. 2744.07(B) is to preserve the financial integrity of the political subdivision along with the purpose of making whole the employee (not to provide means for persons (including Gillispie here) who have sued the employee to collect on their judgments from the political subdivision), then indemnifying Moore for what he can pay towards the judgment accomplishes what the Ohio General Assembly strived to accomplish by enacting the Act.

      The Township understands that Gillispie has damages, but the Panel's interpretation of R.C. 2744.07(B) holds Moore—the only person who committed civil rights violations against Gillispie—harmless, effectively imposing *respondeat superior* liability on the Township. To what degree is it reasonable to hold Moore completely harmless? A court can determine that the amount that the Township

14

(which has been found to have not committed any violation against Gillispie) must indemnify Moore is what Moore can pay toward the judgment.  Such a determination will not usurp the role of the jury to impose a certain amount against Moore, who is the only one who committed civil rights violations against Gillispie, and it upholds and respects the stated purposes of the Act and R.C. 2744.07(B).

II.        THERE IS GOOD CAUSE FOR A STAY

There is good cause for a stay.  Once the mandate is issued, the Township assumes that Gillispie may commence efforts to execute and enforce the $45 million judgment he obtained against Moore.  What happens with respect to the indemnification order against the Township, as discussed above in this motion and throughout the Township's briefing in this case, is unclear.  R.C. 2744.07 is silent on how the indemnification order is to be executed or enforced, and although requested by the Township, the Panel did not certify any questions to the Ohio Supreme Court, including how the indemnification process is supposed to work (not to mention questions regarding the constitutionality of the statute and its interplay with the controlling federal civil rights law).  The only thing that is clear, however, is that under *Ayers v. City of Cleveland*, indemnification is personal to Moore (and should be limited to what Moore can pay), and Gillispie, as a judgment creditor of Moore, has no rights with respect to that indemnification order and cannot enforce the indemnification order against the Township.  A stay of the

mandate is necessary to allow for possible resolution by the United States Supreme Court before the Township and its residents are subjected to the irreparable financial catastrophe that is to come if the indemnification order is left to stand.

Indeed, and in no uncertain terms, the mandate will be irreparably catastrophic for the Township and its residents, a result that must be avoided if possible. As the Township set forth in its Petition for Rehearing en Banc (Doc. 77) (incorporated by reference in full in this motion), the devasting consequences of the Panel's decision will be far-reaching, long-lasting, and irreparable. The Court's opinion and mandate to issue will result in financial ruin for the Township and negatively affect its residents (who also had nothing to do with Moore's actions) for years and years to come. The Township's funding sources and ability to provide the statutorily-required essential services for its residents will be gutted by the current indemnification order. The Township does not have the income producing capacity or ability to come up with funds to pay Moore $45 million within the confines of the Ohio Constitution and the limited statutory authority under which the Township operates. *See* Ohio Constitution, Article XII, §2; R.C. Title 5; R.C. 133.09(B) and R.C. 5705.02.

Under the exigent circumstances presented by this complex case and its many unsettled questions of federal and state law, staying the mandate pending

the filing of a petition for writ of certiorari, therefore, is imperative, as it will avoid the immediate and irreparable disastrous impact on the Township and its residents, which impact might be averted altogether depending on the disposition of the matter by the United States Supreme Court.

III.        CONCLUSION

For all the reasons above, this Court should stay the mandate.

Respectfully submitted,

/s/ Jeffrey T. Cox
Jeffrey T. Cox (0055420)
Brian D. Wright (0075359)
Melinda K Burton (0064618)
Morgan K. Napier (0099190)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH  45402
Telephone:  (937) 227-3704
Fax:  (937) 227-3717
Email:  jcox@ficlaw.com
        bwright@ficlaw.com
        mburton@ficlaw.com
        mnapier@ficlaw.com

Attorneys for Miami Township Board of Trustees

17

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because this document contains **3,828** words.

2.    This document complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type-style of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Dated:  June 30, 2025                  /s/ Jeffrey T. Cox
                                       Jeffrey T. Cox

                                       Attorney for Miami Township Board of Trustees

## CERTIFICATE OF SERVICE

I certify that on the 30th day of June, 2025, I electronically filed the foregoing Intervenor – Appellant Cross-Appellee Miami Township Board of Trustees' Motion to Stay the Mandate with the United States Court of Appeals for the Sixth Circuit using the case filing system of this Court. The electronic case filing system sent a "Notice of Electronic Filing" to all the attorneys of record.

/s/ Jeffrey T. Cox
Jeffrey T. Cox

4909-8559-1116.1